GUILLERMO RIVERA, Respondent, et al., Plaintiff, v CITY OF NEW YORK, Appellant.

First Department, March 26, 1985

### APPEARANCES OF COUNSEL

*Noreen M. Giusti* of counsel (*Larry A. Sonnenshein* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Seymour Armstrong* of counsel (*Lawrence M. Rosenberg* and *Herbert M. Horowitz, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

FEIN, J.

On July 22, 1978, plaintiff Guillermo Rivera, then age 34, fell in a hole in the sidewalk in The Bronx, striking his right knee on the pavement. On the following morning, his knee was X-rayed in the emergency room at Lincoln Medical Center. The hospital record indicates he was then limping on his right leg and the knee was tender and swollen. The knee was bandaged, and plaintiff was given medication, furnished with crutches and instructed to return one week later. He remained at home in bed until July 31, 1978, when he returned to the clinic. Based on the X rays, a diagnosis of "injury to the medial collateral ligament, medial meniscus and anterior cruciate ligament" was made.

Plaintiff was admitted to the hospital and surgery was performed on August 1, 1978 to reconstruct the knee. Plaintiff was fitted with a cast that extended to his toes, and he was discharged on August 12, 1978, walking on crutches. The cast was removed two months later and he then wore a girdle extending from his thigh to his ankle for five months. He received physical therapy at the hospital clinic, and six months after the surgery he stopped using the crutches. He was out of work for five or six months.

On the trial, plaintiff testified that he limped when he walked, during the day he would experience pain and cramps in the leg, and he had difficulty sleeping because of pain in the leg. He stated that he used a cane and could neither walk for long distances nor stand on his feet for too long, that he took aspirin a couple of times a day, that he had difficulty walking the stairs, and that he could no longer exercise as he had prior to the accident.

At issue here is the testimony of Dr. Irving Parnes, a surgeon certified in the field of general surgery, who was called by the plaintiff to interpret the hospital records which were in evidence. The doctor stated that the medial meniscus, which he described as a piece of cartilage between the femur and tibia, was removed; that the medial collateral ligament was torn and was reattached during the surgery; that the anterior cruciate ligament was also torn and reattached. All of this was contained in the hospital records. The doctor further testified that after removal of a meniscus, the bones will "grate" or "rub together", and further, that after ligamentous tissue is torn, it can never be the same because it repairs itself with scar tissue instead of the same elastic ligamentous tissue. He further testified that repair of the anterior cruciate ligament required that holes be drilled in the femur in order to anchor the torn ligament with sutures, as indicated in the hospital record.

All of this testimony consisted of reading and explaining what was contained in the hospital record.

It is undisputed that the hospital record, which was in evidence, had been furnished to defendant.

Plaintiff's attorney then asked Dr. Parnes three hypothetical questions:

(1) Whether, in his opinion, based upon a reasonable degree of medical certainty, the accident was a competent producing cause of the injuries found in the emergency room as well as the injuries thereafter treated;

(2) Whether plaintiff's complaints and symptoms were causally related to the accident; and

(3) Whether plaintiff's symptoms and injuries were of a permanent nature.

Dr. Parnes answered yes to all three questions, and further stated that in his opinion the injuries sustained by plaintiff were a "worsening type of injury". He testified that over a period of time the pain, instability and inability to use the entire knee would worsen with arthritis and further contracture of the repaired ligaments.

On direct examination the doctor stated that his opinion was based upon a review of the hospital records and the symptoms described to him in the hypothetical questions.

On cross-examination the doctor testified that based on the injuries described in the hospital record, plaintiff had made a good recovery and that he would be able to continue as a shipping clerk and lift packages weighing up to 20 pounds during his work. During the cross-examination, when asked whether he had ever examined plaintiff, the doctor responded that he had done so two days prior to the start of the trial and that he had taken X rays. He was then asked whether his opinion was based on that examination. He stated it was not.

Upon further inquiry, the doctor stated that he had come to his conclusions based upon his reading of the hospital record, which were confirmed upon his examination of plaintiff and review of the X rays he had taken. When asked whether any of his opinions had been based, in part or in whole, upon the physical examination and X rays he stated that they only confirmed the opinion he had formed from reading the hospital record. He further stated he would have given the same opinions without examining plaintiff, but that he was "much happier to give them after the examination" which confirmed his opinions based on the hospital record.

After counsel for defendant completed cross-examination, he moved to have the doctor's testimony stricken entirely, or at least that portion of the testimony to the effect that the injury was permanent. Counsel argued that there was no reference to permanency in the hospital records. Alternatively, counsel moved for a mistrial so that the proper exchange of medical information required by section 660.11 of the Rules of the Supreme Court (22 NYCRR 660.11) could be complied with. The court denied the motion for a mistrial and reserved decision on the motion to strike all or part of the doctor's testimony. At the

conclusion of the trial, the court denied the motion in its entirety.

Defendant offered no medical testimony. It called a private investigator who had observed the plaintiff for a three-hour period on October 9, 1982 and taken motion pictures of the plaintiff which were admitted in evidence. The investigator testified as to various activities in which plaintiff engaged on that date, stating that plaintiff did not limp or use a cane, or appear to have any pain or discomfort or hesitation in moving or lifting heavy objects, and that he was not assisted by anyone else.

In charging the jury, the Judge stated that Dr. Parnes had examined the plaintiff, and when "asked whether or not his opinion was based on his examination or on the hypothetical questions * * * Dr. Parnes indicated that he had come to a conclusion based solely on the hospital record". Plaintiff objected to this charge, asserting that by reason of the cross-examination plaintiff became entitled to a charge that the jury should consider that the testimony was also based upon the physical examination. Defense counsel insisted the charge was proper. However, he requested that the court reconsider the prior ruling. The court overruled the plaintiff's objection and adhered to its previous ruling denying defendant's motion to strike.

Section 660.11 of the Rules of the Supreme Court, New York and Bronx Counties (22 NYCRR 660.11 [h]), provides in pertinent part: "Unless an order to the contrary is made or unless the justice presiding at the trial in the interests of justice and upon a showing of good cause shall hold otherwise, * * * no party shall be permitted to offer any evidence of injuries or conditions not set forth or put in issue in the respective medical reports previously exchanged, nor will the court hear the testimony of any physicians whose medical reports have not been served as provided by this rule."

The dissent concludes that *Kastner v Rodriquez* (91 AD2d 950) required the exclusion of all the expert's testimony, and that a plaintiff cannot avoid the penalty authorized by the medical exchange rule for failure to furnish records simply by substituting hypothetical questions. However, *Kastner* is clearly distinguishable. In that case, there was a conflict between the testimony of the plaintiff's two medical experts and the defendant's expert as to whether the accident was the cause of the plaintiff's many injuries. One of the plaintiff's experts admitted that his answers to the hypothetical questions were based upon his recent examination of the plaintiff in that case. There the

hospital record described the plaintiff's injury as merely a chip fracture of the nose, and the testimony of the experts related to headaches, nose bleeds, severe pain in her lower back and legs and serious psychological damage, none of which were described in the hospital record.

In our case, the hospital record clearly documents plaintiff's knee injury in precise particularity, as testified to by Dr. Parnes in reading and interpreting the record. Moreover, here defendant's counsel conceded "that the hospital record indicates he had a menisectomy and he had reconstructive surgery. I admit that's what the hospital record says, and I have not rebutted it, and I will not attempt to do so now." Accordingly, the court's decision not to strike the testimony of the doctor would appear to have been made for "good cause" shown and "in the interests of justice" as permitted by section 660.11 and was not an abuse of discretion. In *Wonsch v Snyder* (53 AD2d 1031), the Fourth Department ruled that although there was a violation of a similar court rule, the hospital record in evidence contained a detailed description of the injuries treated by the doctor who testified at the trial. Although a medical report to that effect had not been served as required by the rule, the defendants were fully apprised of the injuries and damages from the hospital record. So, too, here. Although, as *Kastner* (*supra*) states, it may be difficult to perceive how a doctor can divorce his or her answers to hypothetical questions from the medical examination performed on a plaintiff, notwithstanding that doctor's possible claim to the contrary, Dr. Parnes did state in this case that his opinion was not based on his physical examination. The court's instructions to the jury that the doctor stated his opinion was based solely on the hospital record was sufficient to avoid any prejudice to the defendant.

It stands undisputed on this record that the medial meniscus was removed and that surgery was performed on the medial collateral ligament and anterior cruciate ligament, which had been torn and were reattached during the surgery. The doctor's testimony as to the existence of these conditions and their consequences is far different than the conflicting testimony of the doctors in the *Kastner* case. There was no conflicting testimony here. Defendant did not call a doctor nor dispute the hospital record. On the facts of this case, it is unnecessary to speculate as to whether the doctor could have testified from the records alone. Contrary to the dissent, the testimony was admissible based upon the hospital record and the doctor's interpretation of it. In its charge, the court indicated that the basis for admitting the testimony was not the doctor's examination of the

plaintiff but rather his examination of the record. A literal compliance with the rule, based upon the speculation in *Kastner* (*supra*), would violate the interests of justice and serve no proper or useful purpose.

Accordingly, the judgment after trial (Mercorella, J., and a jury), Supreme Court, Bronx County, entered June 14, 1983, in favor of plaintiff Guillermo Rivera against the City of New York in the sum of $131,421, should be affirmed, without costs.

LYNCH, J. (dissenting). I would reverse and remand for a new trial on the issue of damages.

The facts here track those found by this court to be reversible error in *Kastner v Rodriquez* (91 AD2d 950). The permanency of the injuries sustained by this plaintiff-respondent was the pivotal issue on the trial. A medical witness, Dr. Parnes, testified for plaintiff, and a private investigator was called by defendant to show motion pictures to belie permanency. Defendant contends Dr. Parnes' testimony was improperly admitted. The doctor had examined plaintiff a few days prior to testifying, but there was no compliance with the medical exchange rule, 22 NYCRR 660.11 (h). Plaintiff's counsel limited his inquiry of the doctor to hypothetical questions. The doctor insisted that his opinions were derived solely from the hospital records. He denied that his examination of plaintiff, made before he had seen the records, contributed in any degree to his opinion despite his having answered the question "Then why did you examine Mr. Rivera?", with "I examined Mr. Rivera to find out what he had", and despite no claim of permanency in the records. I repeat what this court held in *Kastner* (pp 950-951): "It is difficult to perceive how a doctor can divorce his or her answers to hypothetical questions from the medical examination performed on the plaintiff notwithstanding that doctor's possible claim to the contrary. At any rate, the mandate of 22 NYCRR 660.11 (h) is clear. The plaintiff may not circumvent imposition of the penalty authorized by the medical exchange rule for failure to comply therewith by the strategem of substituting questions characterized as 'hypothetical'."

By its own terms the rule's requirement of medical report exchange may be avoided by the trial court "in the interests of justice", "upon a showing of good cause". The trial court found neither here. Nor could it have done so. Plaintiff's only claim for admission of the testimony, and the court's basis for admitting it, was that it derived solely from hypothetical questions. Maybe so, but if true, admission on that ground is forbidden by *Kastner* (*supra*).

SANDLER, J. P., ASCH and MILONAS, JJ., concur with FEIN, J.; LYNCH, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, entered on June 14, 1983, affirmed, without costs and without disbursements.